RICHARD A. DANZIG, TRUSTEE *v.* PDPA, INC., ET AL.
(AC 31457)

Lavine, Alvord and Bear, Js.

Argued September 20—officially released November 30, 2010

*Steven M. Basche,* for the appellant (named defendant).

*Timothy P. Pothin,* for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant PDPA, Inc. (PDPA), appeals from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, Richard A. Danzig, trustee for the Defined Benefit Pension Trust.[1] On appeal, PDPA claims that the court improperly refused to allow it the opportunity to plead in response to the plaintiff's amended complaint. Additionally, the plaintiff raises questions about PDPA's standing and whether the appeal has been taken from a final judgment. We affirm the judgment of the trial court.

The following relevant facts and complicated procedural history are gleaned from the record. On May 9, 2007, PDPA and the plaintiff entered into a commercial arrangement. The plaintiff agreed to lend PDPA $1.3 million; PDPA signed a promissory note in that amount, which was secured by two parcels of land that it owned in Glastonbury, a 17.48 acre parcel and a 26.67 acre parcel (mortgaged property). Patricia Dadi (Patricia), president and the alleged sole shareholder of PDPA, and Ahmed A. Dadi (Ahmed), vice president and agent for service of PDPA, executed a written guaranty of PDPA's obligation on the note to the plaintiff. The note matured on May 8, 2008.

On July 28, 2008, the plaintiff filed the present foreclosure action in Superior Court, alleging that PDPA had defaulted on the note and seeking a judgment of strict foreclosure of the mortgaged property and a deficiency

---

[1] Also named as defendants in the trial court were: Ellen Rosenblit, trustee; the Mortgage Company, L.L.C.; and Ahmed A. Dadi and Patricia Dadi. These defendants are not parties to this appeal. The Dadis, however, have filed a separate appeal, AC 31456.

judgment against PDPA and the Dadis. The return date was August 12, 2008. On September 4, 2008, attorney Kevin L. Mason filed a general appearance for PDPA. On November 6, 2008, the plaintiff filed a motion for default against PDPA for failure to disclose a defense. On November 7, 2008, the Dadis each separately filed an answer, special defenses and a counterclaim to the plaintiff's complaint, and, on November 10, 2008, Patricia filed an answer and disclosure of defenses on behalf of PDPA. Although neither of the Dadis is an attorney, they argued that they should be permitted to represent PDPA in the foreclosure action, and, although Mason previously had filed his appearance for PDPA, the Dadis argued that he was not hired for purposes of litigation and that his representation was limited. The court denied the Dadis permission to represent PDPA, but it did give them two weeks to secure different counsel. On December 8, 2008, it granted the plaintiff's motion for default for failure to disclose a defense as against PDPA.

On December 5, 2008, PDPA transferred by warranty deed its rights, title and interest in the mortgaged property to Ahmed. Also on that date, Ahmed moved to be substituted as the party defendant in place of PDPA, which motion was denied by the court on December 8, 2008. On December 29, 2008, Ahmed moved to be made a party defendant in addition to PDPA. On January 15, 2009, the plaintiff withdrew his complaint against the Dadis, thus effectively removing them from the plaintiff's case, although the Dadis each had a counterclaim that remained pending against the plaintiff. On May 6, 2009, the court granted the motion of Ahmed to be named a party defendant as the new record owner of the mortgaged property. Thereafter, on May 11, 2009, the plaintiff filed an amended complaint to reflect Ahmed's ownership of the mortgaged property. On May 12, 2009, Ahmed, specifically as record owner of the

mortgaged property, filed an answer, special defenses and a counterclaim. Ahmed, specifically as guarantor on the note, filed a separate amended answer, special defenses and a counterclaim in response to the plaintiff's amended complaint, although no claim was pending against him in his capacity as guarantor. On May 22, 2009, the plaintiff filed a motion for summary judgment against the Dadis. On June 15, 2009, the plaintiff filed an amended motion for judgment of strict foreclosure of the mortgaged property.

On June 17, 2009, attorney Steven M. Basche filed an appearance on behalf of PDPA in lieu of the appearance of Mason. The plaintiff's motion for a judgment of strict foreclosure appeared on the short calendar of June 29, 2009. On that day, Basche filed an answer, special defenses and counterclaim on behalf of PDPA. He also filed a motion to set aside the default for failure to disclose a defense. The court denied PDPA's motion to set aside the default, granted the plaintiff's motion for summary judgment against the Dadis and rendered judgment of foreclosure by sale, finding the debt to be $1,676,458. Subsequent motions to reargue or to reopen filed by the Dadis and PDPA were denied by the court. This appeal followed.

I

Initially, the plaintiff argues that PDPA lacks standing to bring this appeal and that PDPA has not appealed from a final judgment. We do not agree.

A

Standing

The plaintiff raises a claim that PDPA does not have standing to maintain this appeal. Specifically, he argues that there is no "appellate jurisdiction where an appellant with no legal or economic interest in the mortgaged

premises appeals from a judgment of foreclosure by sale . . . ." We are not persuaded.

"[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . This court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002).

In the present case, at the time the action for foreclosure was commenced, PDPA was the record owner of the mortgaged property. After the property was transferred to Ahmed, PDPA remained a defendant in the case because it had executed the promissory note, and it remained liable for any potential deficiency judgment.

"We have observed that the procedure used to obtain a deficiency judgment [in a foreclosure action] is also part of the main action. . . . The defendant in the subsequent deficiency proceeding, however, cannot assert defenses properly addressed to the actual judgment of foreclosure. Any claims by the defendant that were made or could have been made in the foreclosure proceeding cannot be relitigated at the deficiency hearing. . . . This view is reinforced by the limited nature of the deficiency hearing. Our Supreme Court has held that [i]n the hearing contemplated under [General Statutes]

§ 49-14 to obtain a deficiency judgment, the court, after hearing the party's appraisers, determines the value of the property and determines any deficiency. This deficiency judgment procedure presumes the amount of the debt as established by the foreclosure judgment and merely provides for a hearing on the value of the property." (Citations omitted; internal quotation marks omitted.) *Vignot* v. *Bank of Mystic*, 32 Conn. App. 309, 313, 628 A.2d 1339 (1993).

In this appeal, PDPA claims that the court improperly prohibited it from filing a responsive pleading after the plaintiff filed an amended complaint. In making this claim, it suggests that it was aggrieved by the ruling of the court because it had valid defenses to the claims that were asserted against it in the amended complaint. Reviewing the proposed defenses, it appears that they, at least in part, relate to the promissory note and the amount of the debt. Because PDPA would be unable to raise such issues in an appeal from a deficiency judgment; see id.; we conclude that, to the extent that PDPA's claim potentially could have an impact on a future deficiency proceeding, it has standing to raise such a claim in the present appeal. See *Nanni* v. *Dino Corp.*, 117 Conn. App. 61, 70, 978 A.2d 531 (2009) ("[a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected" [internal quotation marks omitted]).

B

Final Judgment

The plaintiff next raises a claim that PDPA is attempting to appeal from a nonfinal judgment because the court rendered judgment as to liability only. He argues: "Entirely apart from the occurrence of a committee sale and its approval by the court, neither of which have yet occurred, there is the question of

whether the plaintiff will elect to pursue a deficiency judgment against PDPA and, if so, whether one will be granted." We are not persuaded.

Although the plaintiff asserts this as a final judgment claim, a close review of his argument leads us to conclude that he actually is arguing that PDPA is not yet aggrieved by the court's judgment and, accordingly, that it does not have standing. We note that "deficiency proceedings are not, and never have been, independent actions on the debt. Rather, they are part of the main foreclosure suit." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Voll,* 38 Conn. App. 198, 207, 660 A.2d 358, cert. denied, 235 Conn. 903, 665 A.2d 901 (1995). Furthermore, a judgment of foreclosure constitutes an appealable final judgment when the court has determined the method of foreclosure and the amount of the debt. See *Capp Industries, Inc.* v. *Schoenberg,* 104 Conn. App. 101, 109 n.5, 932 A.2d 453 ("a judgment of foreclosure is not a final judgment until the trial court determines the method of foreclosure and the amount of the debt"), cert. denied, 284 Conn. 941, 937 A.2d 696, 697 (2007). In this case, the court rendered a judgment of foreclosure, which set forth the method of foreclosure and the amount of the debt. Therefore, it is a final judgment. Furthermore, having concluded in part I A of this opinion that PDPA has standing to appeal, we need not address this claim further.

II

On appeal, PDPA claims that the court was required, pursuant to Practice Book § 10-61, to allow it the opportunity to plead in response to the plaintiff's amended complaint.[2] Specifically, PDPA argues: "By filing a

---

[2] Practice Book § 10-61 provides: "When any pleading is amended the adverse party may plead thereto within the time provided by Section 10-8 or, if the adverse party has already pleaded, alter the pleading, if desired, within ten days after such amendment or such other time as the rules of practice, or the judicial authority, may prescribe, and thereafter pleadings

request to amend its complaint . . . on May 11, 2009, the [p]laintiff gave PDPA . . . an opportunity to plead to that amended complaint, regardless of whether [it] had previously been defaulted or had previously answered the complaint. . . . Pursuant to Practice Book § 10-61, when a pleading is amended, the adverse party may plead to the amended pleading within the time period set forth in Practice Book § 10-8." The plaintiff argues that PDPA previously had been defaulted for failure to disclose a defense and that default had not been set aside or opened; therefore, he argues, the court properly exercised its discretion in not permitting PDPA to file an answer and disclose defenses in response to the amended complaint. We agree with the plaintiff.

Although PDPA argues that pursuant to Practice Book § 10-61, the court was required to permit it to file a responsive pleading, despite its previous default for failure to disclose a defense, we conclude that this was a matter within the sound discretion of the court. " '[T]he design of [the] rules [of practice] being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice.' Practice Book § 1-8. Further, the '[r]ules of practice must be construed reasonably and with consideration of this purpose. . . . Rules are a means to justice, and not an end in themselves; their purpose is to provide for a just determination of every proceeding.' . . . *Tolland Bank* v. *Larson*, 28 Conn. App. 332, 335, 610 A.2d 720 (1992)." *Webster Bank* v. *Zak*, 71 Conn. App. 550, 558 n.5, 802 A.2d 916, cert. denied, 261 Conn. 938, 808 A.2d 1135 (2002).

"[A] foreclosure action constitutes an equitable proceeding. . . . In an equitable proceeding, the trial court

shall advance in the time provided by that section. If the adverse party fails to plead further, pleadings already filed by the adverse party shall be regarded as applicable so far as possible to the amended pleading."

may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . This court must make every reasonable presumption in favor of the trial court's decision when reviewing a claim of abuse of discretion. . . . Our review of the trial court's exercise of legal discretion is limited to the question of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) Id., 556–57.

In support of its argument that the court was required to permit it to file a responsive pleading, despite its default, PDPA relies on *New Milford Savings Bank* v. *Jajer*, 52 Conn. App. 69, 726 A.2d 604 (1999), and *Mazulis* v. *Zeldner*, 116 Conn. 314, 164 A. 713 (1933). After a careful review of these cases, we conclude that they are inapposite. In *New Milford Savings Bank*, we concluded that the court improperly had rendered a judgment of foreclosure when the plaintiff had filed its motion for judgment *prior to* the defendants having been defaulted, and the court rendered judgment *before* the defendants' time to plead had expired. *New Milford Savings Bank* v. *Jajer*, supra, 83. In *Mazulis*, our Supreme Court concluded that if an amendment to a complaint, made after trial, substantially changes the cause of action originally set forth, the defendant should be permitted to file new or amended pleadings. *Mazulis* v. *Zeldner*, supra, 317. Neither opinion provides much guidance in the case presently before us.

The plaintiff argues that *Webster Bank* v. *Zak*, supra, 71 Conn. App. 550, controls this case. In *Webster Bank*, the plaintiff was compelled to file an amended complaint by the transfer of the mortgaged property from one entity to another entity, MFR of East Hampton,

LLC (MFR). Id., 554. MFR, the entity to which the property had been transferred, had sought to be made a party defendant after judgment because it had become the record titleholder of the property. Id. MFR then claimed that the filing of the amended complaint resulted in the opening and vacating of the judgment of foreclosure, and it argued that the case should begin anew. Id., 556. On appeal, we explained that the plaintiff never would have had to have filed the amended complaint if MFR had not requested to be made a party defendant and that the filing of the amended complaint was compulsory. Id., 557. MFR, in reliance on Practice Book § 10-61, argued that it should be permitted to challenge liability and debt under the note. Id., 557–58. We concluded that Practice Book § 10-61 could not be read to require the court to open and to vacate its previous judgments in complete disregard of its judicial discretion. Id., 558. We specifically pointed out that the court had not vacated its prior judgment and that the purpose of ordering the amended complaint solely was to name MFR as the new record titleholder of the property. Id., 559. We then concluded that the court properly exercised its discretion in limiting the proceedings to amending the complaint for purposes of this substitution only. Id., 559–60. We agree with the plaintiff that *Webster Bank* is persuasive.

In the present case, PDPA was the record titleholder of the mortgaged property. Well after the foreclosure proceedings had been instituted, and three days before PDPA was defaulted for failure to disclose a defense, PDPA transferred its interest in the mortgaged property to Ahmed. In response to this transfer, Ahmed moved to be named a party defendant, which request the court eventually granted. The plaintiff then amended its complaint to allege that Ahmed had become the record owner of the mortgaged property. In response to this amended complaint, PDPA then sought to file an answer

and disclosure of defense. PDPA, however, had been defaulted for failing to disclose a defense long before the filing of the amended complaint.[3] As in *Webster Bank*, we conclude that the filing of the amended complaint was compulsory, caused by PDPA's voluntary transfer of its ownership of the mortgaged property. The amending of the complaint did not serve to vacate the court's earlier ruling; PDPA remained in default, and, on appeal, PDPA does not challenge the court's denial of its motion to open the default. We conclude that the court properly exercised its discretion in not permitting PDPA to file a responsive pleading after the plaintiff amended his complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] "Because the defendant was defaulted for failure to disclose a defense, the defendant's liability on the mortgage conclusively was determined. . . . A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant." (Citations omitted; internal quotation marks omitted.) *Bank of America, FSB* v. *Franco*, 57 Conn. App. 688, 692–93, 751 A.2d 394 (2000).